**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **IRIS MCCLAIN,** | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | * Case No.: PWG 20-cv-2035 |
|  | * |
| **WELLS FARGO BANK, N.A.,** *et al.,* | * |
|  | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

On July 10, 2020, Plaintiff Iris McClain, proceeding without counsel, filed a complaint against defendants Bank of New York Mellon ("BNYM"); Specialized Loan Servicing ("SLS"); Shapiro & Brown, LLP;[1] Timothy Sloan (the former CEO of Wells Fargo); and Wells Fargo Bank, N.A.[2] Complaint (ECF No. 1). On October 9, 2020, BNYM and SLS filed a pre-motion letter seeking permission to file a motion to dismiss, ECF No. 10, and on October 13, 2020, Wells Fargo sought permission to do the same. ECF No. 14. I then afforded Ms. McClain the opportunity to file an amended complaint, to address the deficiencies identified by the pre-motion letters that had

---

[1] Ms. McClain has also sued attorneys Kristine Brown and William Savage of Shapiro & Brown, LLP. I will refer to these Defendants collectively as the Shapiro & Brown Defendants.

[2] The Wells Fargo entities sued here are Wells Fargo & Company ("WFC") and Wells Fargo Bank, N.A., for itself and as successor to Wells Fargo Home Mortgage ("WFB") (together, the "Wells Fargo Defendants"). Ms. McClain has attempted to plead causes of action against Wells Fargo & Company ("WFC"). I take judicial notice that WFC is the parent company of WFB and not a loan servicer. Because the causes of action Ms. McClain asserts concern the servicing and collection of her mortgage loan by WFB and others, all claims asserted against WFC are dismissed with prejudice. Wells Fargo's Mot. Mem. 10 (ECF No. 32-1); *see also* WELLS FARGO 2017 RESOLUTION PLAN 18 https://www.fdic.gov/regulations/reform/resplans/plans/wellsfargo-165-1707.pdf.

1

been filed (which detailed the basis for the motions that the defendants intended to file). Ms. McClain filed an amended complaint, ECF No. 21. However, Ms. McClain's amended complaint omitted Timothy Sloan and the Shapiro & Brown Defendants. Upon receipt of the amended complaint, Defendants BNYM and SLS jointly filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 30. Wells Fargo filed a motion to dismiss two days later. ECF No. 32. On January 22, 2021, Defendant Timothy Sloan filed separate motions to dismiss, one for failure to state a claim, ECF No. 37, and another for insufficient service of process, ECF No. 38. Finally, the Shapiro & Brown Defendants filed a motion to dismiss on April 16, 2021.[3] The motions have been fully briefed[4] and no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, the Defendants' motions are GRANTED and the complaint is dismissed, with prejudice.

**BACKGROUND**

This case is yet another lawsuit in the long line of cases brought by Plaintiff Iris McClain regarding her disputes with Wells Fargo and others concerning a mortgage on her Upper Marlboro, Maryland property. *See, e.g.*, BNYM Mot. Mem. 2 (ECF No. 30-1); Wells Fargo Mot. Mem. 1–4. Judge Chuang detailed the history of the dispute in *McClain v. Wells Fargo Bank, N.A.*, No. TDC-17-1094, 2018 WL 1271231, at *2–3 (D. Md. Mar. 8, 2018). On October 12, 2018, I issued a memorandum opinion dismissing another one of Ms. McClain's suits, *McClain v. Wells Fargo Home Mortgage et al.*, No. PWG-18-2084, 2018 WL 8968242 (D. Md. Oct. 12, 2018). The causes

---

[3] Both Mr. Sloan and the Shapiro & Brown Defendants had previously sought permission to file their motions, which I granted. ECF Nos. 26 and 48.

[4] ECF Nos. 30, 35 (BNYM & SLS motion); 32, 36, 45 (Wells Fargo motion); 37, 38, 46, 50 (Sloan motion); and 53, 59, 61 (Shapiro & Brown motion).

of action there were bankruptcy fraud, fraud upon the court, common law fraud, embezzlement, and theft; violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); complicity to bankruptcy fraud; perjury and suborning perjury; infliction of emotional stress; mail and wire fraud; and false and deceitful misrepresentation. *Id*. at *1. I dismissed Ms. McClain's claims against Wells Fargo and attorneys William Savage and Kristine Brown upon finding that her claims were barred by the doctrine of *res judicata*. *Id*. at *3.

This case brings claims against three defendants who did not appear in the 2018 lawsuit before me: Defendants Specialized Loan Services, Timothy Sloan, and Shapiro & Brown, LLP.[5] Ms. McClain has attempted to plead seven causes of action against the various defendants, some of which bear similarities to claims in her 2018 case before me. The amended complaint purports to allege (1) violations of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605(a)(1)(A) ("RESPA") against Wells Fargo and SLS; (2) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p against SLS only; (3) violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law § 13-301(14)(iii) and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-202 against Wells Fargo, BNYM, and SLS; (4) common law fraud against Wells Fargo, BNYM, and SLS; (5) common law fraud against Wells Fargo relating to an alleged computer glitch; (6) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 against BNYM, SLS, and Wells Fargo; and (7) intentional infliction of emotional distress ("IIED"), apparently against all defendants.

---

[5] The earlier lawsuit proceeded against attorneys at the Shapiro & Brown firm but not the firm itself.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Here, the documents Ms. McClain has attached to her complaint, as well as the exhibits attached to the Defendants' motions, are integral to the claims. For example, Defendant SLS attached, as Exhibit 8 to its motion, a response to one of Ms.

4

McClain's purported Qualified Written Requests ("QWRs"). ECF No. 30-10. The letter is integral to the complaint because it contradicts elements of the RESPA claim Ms. McClain asserts against BNYM and SLS. Further, Ms. McClain does not dispute the authenticity of the exhibit. As for the exhibits Ms. McClain attached to her complaint, the Fourth Circuit has instructed that "[w]hen the plaintiff attaches or incorporates a document upon which [her] claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016); *Kumar v. First Abu Dhabi Bank USA N.V.*, No. ELH-20-1497, 2020 WL 6703002, at *4 (D. Md. Nov. 13, 2020)

## DISCUSSION

I.   **RESPA Claims**

Congress enacted RESPA, 12 U.S.C. §§ 2601 *et seq.*, in part "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). To this end, a loan servicer first must acknowledge receipt of a qualified written request ("QWR") from a borrower within five days of receiving it. 12 U.S.C. § 2605(e)(1). The statute defines a QWR as a written correspondence that: "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* at § 2605(e)(1)(B). Upon receipt by the servicer, it must (within thirty days) either (A) "make appropriate corrections in the account of the borrower," and "transmit to the borrower a written notification of such correction"; or (B) "after conducting an investigation,

provide the borrower with a written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer"; or (C) if the borrower requested information rather than a correction, investigate and provide the information or explain why it is unable to do so. *See id.* at § 2605(e)(2)(A)–(C). Significantly, the provision is disjunctive and therefore, a failure to "make appropriate corrections," as provided for in § 2605(e)(2)(A), is not necessarily a violation of § 2605(e)(2), as the servicer may have complied with subsection (B) or (C) instead. *Id.*

### A. SLS's Motion

Ms. McClain alleges that SLS's responses to her QWRs were untimely and insufficient, (Am. Compl. ¶ 21; BNYM's Mot. Mem. 2), thus giving rise to RESPA claims. But, as SLS correctly argues, a QWR must be sent to a Designated Address, of which SLS informed Ms. McClain in a welcome letter after SLS began servicing her loan. BNYM's Mot. Mem. 2; Welcome Letter 2, (ECF No. 21-3) (Noting that QWRs must be sent to P.O. Box 630147, Littleton, CO 80163-0147); *see also Bird v. Bank of New York Mellon Trust Co., N.A.*, Civ. No. GLR-19-0464, 2019 WL 4750289, *7 (D. Md. Sept. 30, 2019).

SLS and Ms. McClain agree that she sent four purported QRWs, one each in June, July, September, and October of 2019. BNYM's Mot. Mem. 7; Am. Compl. ¶¶ 15–18. But SLS correctly argues that the June and September[6] QRWs were not mailed to the designated address specified in the Welcome Letter. *Compare* Ex. 1 to BNYM's Mot., June letter (ECF No. 30-3)

---

[6] SLS states it also did not receive the purported July QWR at its designated address. Exhibit 6 to the Amended Complaint, ECF No. 21-6, appears to be the purported July QWR and it is addressed to the designated address. Because Ms. McClain alleges she mailed the letter and the exhibit contains the correct address, I will analyze the July QWR along with the October QWR, and decline to find that SLS did not receive the July QWR.

*and* Ex. 7 to Am. Compl., September letter (ECF No. 21-7) *with* Welcome Letter 2, (ECF No. 21-3).[7] Because those purported QRWs were not mailed to the designated address, SLS had no obligation to respond and therefore the June and September correspondence cannot give rise to a RESPA claim. *Bird*, 2019 WL 4750289, at *7 ("If a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a qualified written request. . . . Failure to send the [alleged] QWR to the designated address for the receipt and handling of QWRs does not trigger the servicer's duties under RESPA.") (quoting *Peters v. Bank of Am., N.A.*, No. 3:14-CV-513, 2015 WL 1259417, at *2 (E.D. Va. Mar. 18, 2015) (cleaned up)).

Assuming that SLS received the July correspondence, SLS argues that Ms. McClain's purported QWR was not in fact a valid QWR. BNYM's Mot. 8. This is because her correspondence failed to seek information related to the servicing of her loan. A review of Ms. McClain's letter confirms that this is indeed the case.[8] The July letter alleges various grievances with Wells Fargo and JPMorgan Chase Bank; but it fails to enable SLS to determine why the account was in error or what aspect of the account was in error as a result of any conduct by SLS. ECF No. 21-6. Nor does the purported QWR request any remedy from SLS. *Id*. Therefore, the July letter is insufficient to support a claim against SLS.

As for the fourth purported QWR from October, SLS concedes that it was mailed to the correct address but states that it was timely acknowledged on November 10, 2019, followed by a detailed response on November 15, 2019. BNYM's Mot. Mem. 10–11; *see also* Ex. 8 to Pl.'s

---

[7]   Ms. McClain acknowledges that the June correspondence was not sent to the designated address. Pl's Resp. 4 (ECF No. 35).

[8]   For example, the June letter notes Ms. McClain's dispute with Wells Fargo and threatens to file a complaint relating to fraud. Ex. 1 to BNYM's Mot. (ECF No. 30-3).

7

Opp. (Nov. 15, 2019 response) (ECF No. 30-10). That response informed Ms. McClain that the account status and servicing activity Ms. McClain disputed were not in error. Ex. 8 to Pl.'s Opp. (ECF No. 42-8). A review of the letter (which, again, is integral to the complaint) demonstrates it complies with the requirements of 12 U.S.C. § 2605(e)(2) because the letter states why the servicer believed the account is correct (due to SLS having conducted an investigation in this instance) while also providing contact information to Ms. McClain where she could seek further assistance. 12 U.S.C. § 2605(e)(2)(i) & (ii). Because SLS's correspondence here fully adhered to RESPA, no claim lies as to the October purported QWR.

### B. Wells Fargo's Motion

Ms. McLain also purports to assert a RESPA claim against Wells Fargo, but it fares no better than those against SLS. The purported QWRs at issue here are a May 10, 2019 letter to CEO Alan Parker, Ex. B to Wells Fargo's Mot. (ECF No. 32-3); a June 10, 2019 letter purportedly identifying four accounting errors on her loan, Ex. 5 to Am. Compl. (ECF No. 21-5); and a June 11, 2019 letter requesting "a breakdown of the payment," *id.* at p. 5. Wells Fargo's Mot. Mem. 13.

But just like the letters to SLS, Ms. McClain's May correspondence to Mr. Parker fails to meet the statutory definition of a QWR, as she did not include statements of the reasons why she believed Wells Fargo erred in its accounting of her mortgage loan. § 2605(e)(1)(B). Instead, for example, the letter to Mr. Parker requests a twenty-six-point laundry list of documents, records, and statutes; it does not allege errors in calculating the loan. Ex. B to Wells Fargo's Mot. The letter to Mr. Parker also requests a full investigation of a Wells Fargo executive, a request that is wholly unrelated to the RESPA statute.

As for the latter two letters, Wells Fargo *did* submit a response to Ms. McClain and the contents of that response are partially incorporated into her complaint. Am. Compl. ¶ 21. I agree with Wells Fargo that Ms. McClain appears to assert a RESPA cause of action on the basis of her disagreement with Wells Fargo's response. Am. Compl. ¶ 21. But the statute does not contemplate that disagreement with a response to a QWR is a legitimate basis for a RESPA cause of action, and therefore Count 1 similarly fails against Wells Fargo. 12 U.S.C. § 2605; *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 630 (D. Md. 2012) ("RESPA governs the *timing* of communications." (emphasis added)), *aff'd sub nom. Adam v. Wells Fargo Bank*, 521 F. App'x 177 (4th Cir. 2013). Accordingly, Count 1 is dismissed.

## II.    FDCPA Claims

The five FDCPA claims against SLS consist of the following: (1) SLS misrepresented Ms. McClain's monthly payment amounts in March and April of 2019; (2) SLS did not reduce her mortgage payment by $2.81 after a June 2019 reduction in her Mortgage Insurance Payment ("MIP");[9] (3) a letter to Ms. McClain from SLS purportedly was from an attorney at Shapiro & Brown, LLP, but was actually from SLS, which Ms. McClain alleges is a false representation; (4) scheduling a foreclosure sale during a pending appeal in violation of the FDCPA; and (5) SLS's file was "tagged for litigation" when it scheduled a foreclosure sale. Am. Compl. ¶¶ 31, 32, 34, 35, 37; BNYM's Mot. Mem. 13. These measures, Ms. McClain alleges, amount to abusive and unlawful tactics to collect a debt.

The first two claims, SLS correctly argues, fail under the statute of limitations. The instant lawsuit was filed on July 10, 2020, and the factual bases of first two claims fall outside the one-

---

[9]    *See* ECF No. 21-10.

year statute of limitations under the FDCPA. 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) ("[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered."). Ms. McClain has not pleaded circumstances that would allow application of equitable tolling. Compl. 8–11;[10] *see also* Pl.'s Resp. 14 (ECF No. 35). Accordingly, the first two FDCPA claims must fail.

Nor do the remaining alleged FDCPA violations meet the threshold test for materiality to plead a FDCPA cause of action. SLS argues Ms. McClain "has not attempted to allege that any of the alleged misstatements had or could have had any effect on her decision making process." BNYM's Mot. Mem. 14 (citing *Gates v. Asset Acceptance LLC*, 801 F. Supp. 2d 1044, 1048–49 (S.D. Cal. 2011) ("[Plaintiff] himself does not submit a declaration explaining the effect that the misstatement had on him, or how his ability to assess the risks and rewards of proceeding to trial was impacted.")). Ms. McClain has failed to allege that any of the purported conduct underlying her FDCPA claims materially altered her decisions regarding her mortgage, and therefore the FDCPA claims alleged against SLS fail as a matter of law. *See Gates*, 801 F. Supp. 2d at 1047 ("Only a collector's *material* false or misleading statements are actionable . . . ."). Therefore, Ms. McClain's FDCPA claims against SLS are dismissed.

---

[10] While the amended complaint contains a section titled "TOLLING ALLEGATIONS AS TO THIS CLAIM," Ms. McClain cannot show she is entitled to equitable tolling because the amended complaint acknowledges that Wells Fargo disclosed the calculation issue to borrowers affected by it (Am. Compl. ¶¶ 66–67); thus, she cannot allege fraudulent concealment of facts that form the basis of her claim, as is required for a plaintiff to be entitled to equitable tolling. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (citation omitted).

### III. MDCPA and MCPA Claims

The Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 *et seq.*, "'prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731–32 (D. Md. 2011) (citing Md. Code Ann., Com. Law § 14–202)). It specifically provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Com. Law § 14-202(8). It is well settled in this Court that disputes over the amount owed do not give rise to an MCDCA claim, but that is exactly what Ms. McClain has alleged. *E.g.*, *Lembach v.* Bierman, 528 F. App'x 297, 305 (4th Cir. 2013) (*abrogated on other grounds by Rotkiske v. Klemm*, 140 S. Ct. 355 (2019)); *Marchese v. JP Morgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (The MCDCA does not "allow for recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts.").

Ms. McClain alleges that Defendants Wells Fargo, BNYM, and SLS did not have the right to collect the amount of money they sought. Am. Compl. ¶¶ 40–41. According to the complaint, Wells Fargo transferred to SLS a total debt of $321,880.46 with monthly payments of $1,841.05 that SLS began to demand. *Id*. ¶ 42. Ms. McClain alleges the payments SLS demanded were inflated. *Id*. Specifically, Ms. McClain alleges that SLS and BNYM miscalculated the insurance and Mortgage Insurance Payment elements of Ms. McClain's monthly mortgage payment. But what is lacking—and required to state a claim under the MCDCA—is an allegation that defendants "acted with knowledge as to the invalidity of the debt." *Barr v. Flagstar Bank, FSB*, 303 F. Supp.

11

3d 400, 420 (D. Md. 2018) (quoting *Lindsay v. Rushmore Loan Mgmt., Servs., LLC*, No. PWG-15-1031, 2017 WL 1230822, at *6 (D. Md. Apr. 4, 2017)).

But because there is no allegation here that the defendants knew that the debt was invalid, no MCDCA claim lies. BNYM's Mot. Mem. 17; *Barr*, 303 F. Supp. 3d at 420. Rather, the claim alleges a dispute over Ms. McClain's monthly payment owed. *See e.g.*, Am. Compl. ¶ 45 ("Wells [Fargo] (in June) and SLS (beginning [in] July) demanded $1841.05 per month knowing the mip [sic] was reduced from $30.46 to $27.65 decreasing the monthly to $1838.23."). Accordingly, Ms. McClain has not alleged a viable MCDCA claim against any defendant.[11] And because I find no MCDCA liability against any defendant, there can be no derivative liability under the MCPA. Md. Com. Law Code Ann. §13-301(14)(iii). Accordingly, Count 3 is dismissed.

## IV. Fraud Claims

In Maryland, a "garden variety" fraud claim requires the plaintiff to establish the following:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005).

---

[11] Wells Fargo also argues that *res judicata* bars Ms. McClain's claims concerning inflated balances and accounting errors, such as her MCDCA claim here. *See* Am. Compl. ¶ 42; Wells Fargo's Mot. Mem. 11. But the Amended Complaint alleges, albeit not with great clarity, that the transfer to SLS creates a cause of action under the MCDCA and MCPA. Considering the transfer occurred after the earlier cases, the applicability of *res judicata* is in doubt. Therefore, I will not address it.

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Here, as to SLS and BNYM, Ms. McClain has failed to allege the fourth and fifth elements. While her complaint pleads that SLS mailed her materially false mortgage statements, Am. Compl. ¶ 59, she fails to allege any reliance on these purportedly false statements or that she suffered compensable injury. The $6,225.22, injury she allegedly suffered relating to "emotional, pain and suffering [and] punitive damages and cost[s]" are not pleaded with particularity, Fed. R. Civ. P. 9(b); *see also Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 726 (M.D.N.C. 2015) (explaining that the rule's purpose "is to satisfy the court '(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts.'" (quoting *Harrison*, 176 F.3d at 784)). Therefore, Count Four is dismissed against the BNYM and SLS Defendants.

The same goes for Wells Fargo as to Counts 4 and 5. Nowhere in the amended complaint does Ms. McClain allege that she justifiably relied on the purported fraudulent information Wells Fargo provided regarding her mortgage loan. And as for Count 5, which concerns a computer glitch, Ms. McClain alleges that when she first heard of the glitch, "[i]t made me feel certain I was a victim." Am. Compl. ¶ 66. As a result, Ms. McClain pleads that "it is imperative that [she] be given the opportunity for discovery." *Id.* ¶ 82. But the amended complaint does not—beyond a boilerplate assertion, *id.* ¶ 85—plausibly allege Ms. McClain in any way relied on the alleged misrepresentations that resulted in a compensable injury. She states "[i]t is more likely than not, the malfunctioning computer falsely denied me the opportunity to Make My Home Affordable." *Id.* ¶ 87. But this is just speculation, falling far short of the pleading specificity requirements of

13

Rule 9. *Topshelf Mgmt.*, 117 F. Supp. 3d at 726. Therefore, the fraud claims against Wells Fargo must be dismissed.

**V.     RICO Claim**

RICO "is concerned with eradicating organized, long-term, habitual criminal activity," not "all instances of wrongdoing." *Mitchell Tracey v. First Am. Title Ins. Co.*, No. WDQ-12-1329, 935 F. Supp. 2d 826, 841 (D. Md. Mar. 28, 2013) (quoting *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)). Courts, therefore, must "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions," while at the same time "read the terms of the statute 'liberally' to 'effectuate its remedial purposes.'" *Id.*

Subsection (a) of § 1962 prohibits a person from "us[ing] or invest[ing]" income derived "from a pattern of racketeering activity or through collection of an unlawful debt," or the proceeds of such income, to acquire or establish an enterprise engaged in or affecting interstate commerce. 18 U.S.C. § 1962(a). Subsection (b) prohibits a person from "acquir[ing] or maintain[ing]" through "a pattern of racketeering activity" or "collection of an unlawful debt" an enterprise engaged in or affecting interstate commerce. *Id.* § 1962(b). Subsection (c) prohibits a person from "conduct[ing] or participat[ing] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* § 1962(c). Subsection (d) proscribes conspiracy to violate subsection (a), (b), or (c). *Id.* § 1962(d).

Thus, to state a claim under § 1962, a plaintiff must allege an enterprise. An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). For purposes of § 1962(c) in particular, "Plaintiffs must further allege that the RICO 'enterprise' is

distinct from the defendant 'person' alleged to have violated RICO." *Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *8 (D. Md. Sept. 5, 2014) (citations omitted).  This is because "§ 1962(c) . . . is designed solely to reach criminal activity by employees while protecting the innocent corporate enterprise from criminal infiltration."  *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 347 (D. Md. 1998).

Ms. McClain has not alleged any "enterprise" that is "distinct from the defendant 'person[s]' alleged to have violated RICO," nor has she alleged an enterprise separate from the individual banks and loan servicer.  *See Yesko*, 2014 WL 4406849, at *8.  To successfully allege an enterprise, a plaintiff must allege "(1) an ongoing organization; (2) associates functioning as a continuing unit; and (3) the enterprise is an entity 'separate and apart from the pattern of activity in which it engages.'"  *Donaldson v. Primary Residential Mortg., Inc.*, No. CV ELH-19-1175, 2020 WL 3184089, at *23 (D. Md. June 12, 2020).  Ms. McClain's amended complaint does not do so.  Further, she fails to plausibly allege that any Defendant acquired, established, or maintained an enterprise, let alone that the acquisition, establishment, or maintenance involved a pattern of racketeering activity, unlawful debt collection, or income derived from either.  Am. Compl. 20–22.  And she has not sufficiently alleged a conspiracy in more than conclusory terms.  Therefore, her RICO claim must be dismissed.

## VI.  IIED

IIED is a common law tort under Maryland law, for which the elements are: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe."  *Lasater v. Guttmann*, 194 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611 (1977)).

While it is not clear from the amended complaint, I will assume that Ms. McClain's IIED claim is pleaded against all defendants. Ms. McClain alleges "[t]he Defendants' conduct was intolerable and outrageous, considering the totality and extreme measures they took to exercise rights they did not have," which resulted in her suffering stress and trauma. Am. Compl. ¶¶ 102–103. But as BNYM and SLS correctly argue, IIED causes of action require conduct on the part of defendants that is extreme and outrageous; it must go beyond all bounds of decency. *Bochenski v. M&T Bank*, ELH-14-1031, 2015 WL 1040281, at *28 (D. Md. Mar. 10, 2015) (citations omitted). Nothing alleged in Ms. McClain's complaint rises to this level, particularly in light of the fact that I have found the above causes of action must fail, nor has she pleaded her allegations with the requisite specificity. *Crouch v. City of Hyattsville*, DKC-09-2544, 2010 WL 3653345, at *8 (D. Md. Sept. 15, 2010). Accordingly, her IIED claims must be dismissed.

## VII. Shapiro & Brown and Timothy Sloan's Motions

### A. Shapiro & Brown

As Defendant Shapiro & Brown LLP states in its motion, Ms. McClain's amended complaint fails to allege any cause of action against Shapiro & Brown, though the amended complaint does mention the law firm at paragraphs 34 and 48. Shapiro & Brown's Mot. 4 (ECF No. 54). Even under a liberal interpretation of the complaint, Ms. McClain has failed to state any plausible claim for relief against the Shapiro & Brown defendants.

Nor has Ms. McClain met her burden of establishing valid service under Fed. R. Civ. P. 4. *Moseley v. Pollozzi*, No. RDB 18-1292, 2019 WL 418407 at *2 (D. Md. Feb. 1, 2019); Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m). . . ."). It is well established, and I have previously held, that the requirements of effective service

are a prerequisite to litigating in federal court. *Showell v. Atlanticus Servs. Corp.*, No. PWG-18-2325, 2019 WL 4409363, at *1 (D. Md. Sept. 16, 2019).

While Ms. McClain argues service was perfected, Pl.'s Resp. 14–15 (ECF No. 59), she has failed to substantiate this argument and has therefore failed to meet her burden. As the Shapiro & Brown Defendants state, Ms. McClain argues that she served the *initial* complaint by certified mail, which a mailroom clerk signed for. Shapiro & Brown's Mot. 1–2. But this fails to comply with Md. R. Civ. P. Cir. Ct. 2-121(a)(1)-(3), and therefore, having failed to effect *in personam* service of the initial complaint, Ms. McClain could not have properly served the amended complaint simply by sending it by regular mail. Further, the Court's review of the docket shows that subsequent to Ms. McClain's improper service on a mail room clerk at Shapiro & Brown, LLP's office, she at no point cured her failure to serve an individual authorized to receive service on behalf of Shapiro & Brown, LLP, as required by Fed. R. Civ. P. 4(e)(2)(C). Accordingly, even assuming for the sake of argument that Ms. McClain has stated a valid claim against Shapiro & Brown (which she has not), such a claim fails for lack of proper service. Therefore, her claims against Shapiro and Brown are dismissed.

**B.  Timothy Sloan**

Defendant Timothy Sloan also asserts Ms. McClain failed to perfect service as to him in his individual capacity, which requires dismissal. Sloan Mot. Mem. 3 (ECF No. 37-1). As alleged in the complaint, Ms. McClain initiated her suit against the *former* CEO of Wells Fargo. Am. Compl. ¶ 10. Nonetheless, she attempted to serve him at Wells Fargo's corporate headquarters. ECF No. 5 at 5 (summons). This cannot constitute service upon Mr. Sloan in his personal capacity, and Ms. McClain has failed to meet her burden to refute his motion. Pl.'s Opp. to Sloan 14–17 (ECF No. 46). While she argues that the San Francisco office may have retained office space for

17

Mr. Sloan, Rule 4(e)(2) does not authorize service by delivery to an individual's place of employment.[12] Neither has she shown that the method of service of process on Mr. Sloan complied with the Maryland or California Rules of Civil Procedure. Fed. R. Civ. P. 4(e)(1).

**VIII. Amendment**

Ms. McClain has, after filing her initial amended complaint in this case, repeatedly sought to file a second amended complaint. *E.g.*, Letter dated March 26, 2021 (ECF No. 51); Letter dated May 24, 2021 (ECF No. 60). These requests occurred *after* I provided her with an opportunity to file an amended complaint in order to address the deficiencies in her original complaint, which the Defendants identified in the pre-motion letters that they filed in accordance with the Court's pre-motion procedure. Letter Order dated Oct. 22, 2020 (ECF No. 20). She did so, and the pending motions ensued. When she again sought to file an amended complaint, I informed her that to do so during the pendency of the current motions would result in unwarranted delay and expense, but I gave her the opportunity to file a proposed amended complaint which I stated I would review for futility before deciding whether to allow a second amended complaint to be filed. Letter Order dated Dec. 29, 2020 (ECF No. 34). Inasmuch as Ms. McClain filed her requests to amend after the motions to dismiss from Defendants BNYM, SLS, Wells Fargo, and Timothy Sloan had been fully briefed, allowing her to amend prior to a ruling on the motions would have upended the schedule and prejudiced the defendants who expended considerable resources to file their motions. Further, Ms. McClain had already been afforded an opportunity to amend, *see* Letter Order, ECF

---

[12] To the extent Ms. McClain asserts claims against Mr. Sloan in his capacity as Wells Fargo's CEO, she has failed to state any plausible claims against him, particularly considering he is mentioned in passing only three times in the amended complaint. Sloan Mot. Mem. 2. And while she attempts to develop her claims in her opposition brief, Pl.'s Opp. to Sloan, ECF No. 46, the law is clear that parties may not amend via briefs in opposition to a dismissal motion. *Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *7 (D. Md. Sept. 5, 2014)

No. 20, and filed an amended complaint. Recognizing the potential of expending further resources of the parties and the Court, my December 29, 2020 letter order stated:

> allowing further amendment prior to ruling on the defenses that have now been briefed, which may make any further amendment futile, is not appropriate in light of the Court's obligations under Fed. R. Civ. P. 1. Instead, the briefing on the filed motions will proceed, and if the resolution of those motions results in a finding that res judicata bars this suit, but that further amendments would not be futile, I will consider allowing Ms. McClain to amend.

ECF No. 34 at 2. I then directed Ms. McClain to "file a copy of her proposed amended complaint in compliance with Local Rule 103.6(c)" by January 13, 2021 in order for me "to determine whether the additional claims would be subject to dismissal for the same reasons as the defendants assert that the existing claims must be dismissed . . . ." *Id*.

Ms. McClain did not follow the Court's order and her next request to file an amended complaint was docketed on March 26, 2021, more than two months after the deadline I imposed. ECF No. 51. Having had ample opportunity to amend once to address clearly flagged defects, and after disregarding an order of the Court as to how she should proceed if she wanted to file a second amended complaint, and in light of her multiple past unsuccessful claims, which suggest that she is a vexatious litigant, allowing her to amend at this stage is inappropriate. Further, having fully reviewed the motions to dismiss, I find an amendment would be futile. Ms. McClain has made multiple attempts to hold several of the defendants here liable, and it is clear that the facts underlying her purported claims do not give rise to valid causes of action. *Johnson v. United Parcel Serv*., No. JKB-19-1916, 2020 WL 231379, *4 (D. Md. Jan. 15, 2020) ("[C]ourts need not allow a party to amend a pleading where such amendment would be futile.") (citation omitted). The materials in the record relating to the RESPA claims, for example, could not plausibly support a RESPA claim. And the facts relating to the FDCPA claim do not remotely approach what is necessary to plead that claim. Further, while Ms. McClain appears to acknowledge that fraud must

19

be pleaded with particularity (Am. Compl. ¶ 51 ("Who, Where, & When?")), her attempt to allege the required elements has twice failed in this case, as well as in prior instances of litigation.

Accordingly, because I find further amendment would be futile, and because Ms. McClain had an opportunity to amend previously after being advised of the complaint's shortcomings, and then failed to comply with the Court's instruction that, if she wanted to file a second amended complaint during the pendency of multiple motions to dismiss, she was required to file a draft amended complaint that I would review for futility, I find that dismissal with prejudice as to all claims asserted here is appropriate. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (The determination of whether to dismiss with or without prejudice is discretionary.).

## CONCLUSION

For the reasons stated above, Ms. McClain's amended complaint is dismissed with prejudice. A separate order shall issue.


Date:   August 27, 2021                                     _____/S/_____
                                                            Paul W. Grimm
                                                            United States District Judge